UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROWMOTO ANTWION ROGERS,

    Petitioner,

v.

CARMEN PALMER,

    Respondent.

Case No. 16-10424
Honorable Laurie J. Michelson

**OPINION AND ORDER DENYING
PETITION FOR A WRIT OF HABEAS CORPUS**

Rowmoto Antwion Rogers filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his convictions for first-degree premeditated murder, assault with intent to commit murder, and two firearm-related felonies. Having reviewed the habeas petition, the Warden's response, Rogers's reply, and the state-court record, the Court will deny the habeas petition.

**I.**

The Court will rely on the following facts from the trial court record, as described by the Michigan Court of Appeals. *See* 28 U.S.C. § 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009).

Rogers' convictions arise from a January 2008 shooting in the city of Detroit. *People v. Rogers*, No. 291180, 2010 WL 3062119, at *1 (Mich. Ct. App. Aug. 5, 2010). Shots were fired into a Jeep Commander occupied by five individuals, including Rayvon Perry and Martha Barnett, who died from her wounds. *Id*. None of the occupants of the vehicle were able to identify any of the shooters. *Id*.

The principal evidence against Rogers and his co-defendant Tony Hurd was Perry's testimony. *Id*. Perry testified that he knew both defendants and saw them shortly after the shooting. *Id*. According to Perry, Rogers admitted to him that he and another person, DeAndre Woolfolk, shot at the vehicle from a car driven by his co-defendant. *Id*. Rogers explained that they "messed up" by shooting at the wrong vehicle. *Id*. Perry did not initially disclose this information to the police, but eventually revealed it in response to the prosecutor's investigative subpoena. *Id*.

Rogers's conviction was affirmed on appeal. *Id*., *lv. den*. 793 N.W.2d 236 (Mich. 2011).

Rogers filed a *pro se* post-conviction motion for relief from judgment, which was later supplemented with a brief filed by an attorney. The motion was denied. *People v. Rogers*, No. 08-009271-FC (Wayne Cty. Cir. Ct. May 1, 2012); *People v. Rogers*, No. 08-009271-FC (Wayne Cty. Cir. Ct. May 29, 2014). The Michigan Court of Appeals and Michigan Supreme Court denied Rogers leave to appeal. *People v. Rogers*, No. 324777 (Mich. Ct. App. Jan. 6, 2015); *lv. den*. 873 N.W.2d 560 (Mich. 2016).

Rogers seeks habeas relief on four different grounds: the prosecutor was improperly allowed to vouch for the credibility of his star witness during closing arguments, prejudicial photos were admitted during the trial, there was insufficient evidence to convict him, and the state court improperly denied him a new trial based on newly discovered evidence without holding a hearing.

## II.

The Antiterrorism and Effective Death Penalty Act (AEDPA) (and 28 U.S.C. § 2254 in particular) "confirm[s] that state courts are the principal forum for asserting constitutional challenges to state convictions." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Cullen v. Pinholster*, 563 U.S. 170, 182 (2011). Thus, if a claim was "adjudicated on the merits in State court proceedings," this Court cannot grant habeas corpus relief on the basis of that claim "unless

the adjudication of the claim . . . resulted in a decision" (1) "that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d). But if the state courts did not adjudicate a claim "on the merits," this "'AEDPA deference' does not apply and [this Court] will review the claim *de novo*." *Bies v. Sheldon*, 775 F.3d 386, 395 (6th Cir. 2014).

### III.

### A.

Rogers claims that he was denied a fair trial because of prosecutorial misconduct. Specifically, he argues that the prosecutor improperly vouched for the credibility of his main witness and made an improper "civic duty" argument to the jurors.

Although the Warden urges the Court to find Rogers procedurally defaulted this claim, the Court elects to skip to the merits because wading into procedural default unnecessarily complicates this claim. *See Thomas v. Meko*, 915 F.3d 1071, 1074 (6th Cir. 2019). The Michigan Court of Appeals did not unreasonably reject Rogers' claim of prosecutorial misconduct.

Rogers points to several of the prosecutor's comments in closing argument as improper. The prosecution stated,

> Hero[e]s come in all shapes and sizes. There are the hero[e]s that we're familiar with from movies and TV such as John Wayne. There are war hero[e]s. There are hero[e]s every day in terms of when you hear stories of people who pull people out of the path of cars or parents who are hero[e]s in helping their children or saving their children in fires.
>
> There's a hero that we've heard of most recently in that – the captain of that US AIR – the pilot of that airplane, who with years of training on how to fly airplanes still reacted with calm courage and set that airplane on the Hudson river – and there are reluctant hero[e]s. People who did not choose to be a hero. People who fought the pull to be a hero, who didn't want to be a hero, who didn't want to be in the spotlight.

3

> Rayvon Perry is the reluctant hero in this case. He's the reluctant hero because he came forward and told the truth about what he knew. It is on his shoulders that the case rests . . . . Why is Rayvon Perry a hero? Well, he is going against the grain.
>
> We live in a society where — from the time that we are young, we are taught that it is bad to be a tattle tail [*sic*]. We all know from our own experiences that it's not easy to tell on other people. It makes us uncomfortable particularly when it is with people we know. We also know — and you heard from the witnesses as well, that we live in a culture that has made it mad — it's become the word "snitch." Snitch is something negative. If you're a snitch, you're a bad person. 'Don't tell the police. Don't tell the government. Keep it to youself [*sic*].' Rayvon Perry went against that grain not easily, not willingly, reluctantly — but he did so nonetheless.
>
> Rayvon Perry told the truth against people that he knew . . . and he did it against tremendous pressure . . . He had every reason in the world not to tell the police and not to tell you that Rowmoto Rogers and Tony Hurd admitted being the shooter and the driver in this particular case, but he told the truth.

(ECF No. 1, PageID.21–22; ECF No. 5-8, PageID.1092–1094.)

The Michigan Court of Appeals conducted a plain-error review of this claim. They found that the comments did not amount to an improper vouching as to credibility or an appeal to the juror's civic duty. *Rogers*, 2010 WL 3062119, at *3. Instead, the comments were "properly presented reasons, grounded in the evidence for why the jury should find [Perry's] testimony credible." *Id*. And the prosecutor's characterization of Perry as a reluctant hero "was not an appeal to any sense of the jurors' civic duty, but rather was a comment on [Perry's] circumstances as reflecting reasons for finding his testimony credible." *Id*.

AEDPA deference applies when a state court, on plain-error review, "conducts any reasoned elaboration of an issue under federal law." *Stewart v. Trierweiler*, 867 F.3d 633, 638 (6th Cir. 2017), *cert. denied*, 138 S. Ct. 1998 (2018). Here, although the Court of Appeals only cited to state law, the cases it relied on discuss prosecutorial misconduct in the context of whether it denied the defendant a fair trial. *See People v. Dobek*, 732 N.W.2d 546 (Mich. Ct. App. 2007); *People v. McGhee*, 709 N.W.2d 595 (Mich. Ct. App. 2005); *People v. Unger*, 749 N.W.2d 272 (Mich Ct.

App. 2008). So the Court will presume that the Michigan Court of Appeals adjudicated the claim pursuant to federal law; i.e., it effectively undertook a due process analysis in determining whether the misconduct rendered the trial unfair. *See Johnson v. Williams*, 568 U.S. 289, 298–299 (2013). The Court will apply AEDPA deference to this claim.

The Court will first address the civic-duty claim. Prosecutors cannot make statements "calculated to incite the passions and prejudices of the jurors." *United States v. Solivan*, 937 F.2d 1146, 1151 (6th Cir.1991). The Michigan Court of Appeals found that the prosecutor's characterization of Perry as a "reluctant hero" for coming forward and cooperating "was not an appeal to any sense of the jurors' civic duty, but rather was a comment on [Perry]'s circumstances as reflecting reasons for finding his testimony credible." *Rogers*, 2010 WL 3062119, at *3. The Court cannot say this was an unreasonable application of established Supreme Court law

Roger's improper-vouching claim is closer. But the Court is constrained by the considerable deference that must be given to the state court's decision. "When a petitioner makes a claim of prosecutorial misconduct, 'the touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor.'" *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir. 1993) (citing *Smith v. Phillips*, 455 U.S. 209, 219 (1982)). "The key question on the merits 'is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Stewart*, 867 F.3d at 638 (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)). "Because that standard is 'a very general one,' courts have considerable leeway in resolving such claims on a case-by-case basis." *Id.* (quoting *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (internal quotation omitted)). "That leeway increases in assessing a state court's ruling under AEDPA" such that a federal court "'cannot set aside a state court's conclusion on a federal prosecutorial-misconduct claim unless a petitioner cites . . . other

5

Supreme Court precedent that shows the state court's determination in a particular factual context was unreasonable.'" *Id*. at 638–39 (quoting *Trimble v. Bobby*, 804 F.3d 767, 783 (6th Cir. 2015)).

"In evaluating alleged prosecutorial misconduct, [the court] first determine[s] whether the challenged statements made by the prosecutor were improper." *United States v. Bradley*, 917 F.3d 493 (6th Cir. 2019) (citation omitted). "If they appear improper, we then look to see if they were flagrant and warrant reversal." *United States v. Francis*, 170 F.3d 546, 549 (6th Cir. 1999) (citing *United States v. Carroll*, 26 F.3d 1380, 1388 (6th Cir. 1994)). "Improper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the office of the United States Attorney behind that witness" or makes comments that "imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony." *Id*. at 550 (citations omitted). To determine whether a prosecutor's remarks constituted flagrant misconduct, [the court] assess[es] (1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the conduct or remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) whether the evidence against the defendant was strong." *Id*. (internal quotations and citations omitted).

Were the Court reviewing this issue *de novo*, it would be hard pressed to find that this was not improper vouching. And even applying AEDPA deference, the Michigan Court of Appeals' conclusion that these statements were not improper and therefore did not render Rogers' trial fundamentally unfair is at the outer bounds of reasonable. The prosecutor invited the jury to view Perry as a hero—and an honest one at that. And the prosecutor baldly stated that Perry was telling the truth. The theme of Perry's heroics pervaded the closing argument. And these statements are made all the more problematic because the evidence against Rogers was strongly dependent on

Perry's testimony. But the prosecutor's statements were contextualized by stating that Perry "had every reason in the world" to not go to the police because he and Rogers were from the same neighborhood and had a close relationship. (ECF No. 5-8, PageID.1094–1095.) So, given the leeway the federal court must give to state courts' application of the prosecutorial-misconduct standard, *see Stewart*, 867 F.3d at 638–39, the Court cannot find that the state court unreasonably concluded that the prosecutor was not implying special knowledge of the facts, but highlighting the reasons why the jury should find Perry's testimony credible. Further, Rogers' attorney, in closing, focused on sowing doubt and highlighting evidence that pointed the blame at another person. (ECF No. 5-8, PageID.1116–1122.) And the trial judge instructed the jury that "[t]he lawyer's statement and arguments are not evidence" and that it is the jury's job "and nobody else's" to decide the facts of the case, including "whether [the jury] believe[s] what each of the witnesses said." (ECF No. 5-8, PageID.1143, 1145.) So while the Court does not condone the prosecutor's conduct in this case, the Court cannot find that the state court unreasonably applied Supreme Court precedent in dismissing this claim.[1]

**B.**

Rogers next contends that his right to a fair trial was violated by the admission of three autopsy photographs, which he claims were "gruesome" and unduly prejudicial.

The Michigan Court of Appeals rejected Rogers' claim. *People v. Rogers*, 2010 WL 3062119, at *2. It found that the photos were relevant to prove cause of death and that the bullets

---

[1] Rogers' petition also appears to argue, in passing, that the prosecutor's comments violated his rights under the Confrontation Clause. (*See* ECF No. 1, PageID.24.) It is unclear whether this claim was raised with the state courts. And even assuming some variant was raised, the state court properly addressed it as a claim for prosecutorial misconduct as the prosecutor's statements during closing argument could not be deemed testimony and Rogers was able to cross-examine Perry. *See Crawford v. Washington*, 541 U.S. 36, 51 (2004).

7

passed through an intermediary target before hitting the victim. *Id*. And it found that the "photographs were not so gruesome as to outweigh their probative value" because they were close up shots "not immediately recognizable as photographs of a human body" and were "clinical and bloodless." *Id*.

Rogers argues that he stipulated to the cause of death and that the bullets were shot from outside of the car, so the photos had no probative value. (ECF No. 1, PageID.32–37.) Instead they unfairly prejudiced him and "inflamed the jurors' passions and emotions." (*Id*.)

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id*. Thus, errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000).

To the extent Rogers asserts that his right to due process was violated, he must identify an evidentiary ruling that is "so egregious that it results in a denial of fundamental fairness" to obtain habeas relief. *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Courts have defined the category of infractions that violate fundamental fairness very narrowly. *Id*. at 512 (citing *Wright v. Dallman*, 999 F.2d 174, 178 (6th Cir. 1993)). "Whether the admission of prejudicial evidence constitutes a denial of fundamental fairness turns upon whether the evidence is material in the sense of a crucial, critical highly significant factor." *Brown v. O'Dea*, 227 F.3d 642, 645 (6th Cir. 2000) (internal quotations omitted). Here, as recognized by the Michigan Court of Appeals, the photographs were bloodless and close-ups shots—not immediately recognizable as photographs of a human body. Further, the photos did not identify or implicate Rogers in the murder and there was other evidence

that described the way the victim was shot and killed. *Cf. Ege v. Yukins*, 485 F.3d 364, 375–378 (6th Cir. 2001) (finding due-process violation from admission of bitemark testimony identifying petitioner that was highly prejudicial given that no other evidence placed the petitioner at the scene of the murder). So while the photos may not have been terribly probative given the stipulations and other evidence at trial, their admission was not material of a "crucial highly significant factor" and does not rise to the level of egregiousness necessary to find a due-process violation.

Rogers is not entitled to relief on this claim.

## C.

Rogers next contends that there was insufficient evidence to convict him.

Rogers raised a like claim with the Michigan Court of Appeals. (ECF No. 5-16.) In its opinion, however, that court adjudicated the claim as though Rogers was alleging that the conviction was against the great weight of the evidence. *Rogers*, 2010 WL 3062119, at *3–4. And "whether the evidence was sufficient to sustain a conviction and whether the verdict was against the great weight of the evidence are two separate questions." *People v. Brown*, 610 N.W.2d 234, 240 n. 6 (2000). So the Court will not, as the Warden suggests, presume that the Michigan Court of Appeals adjudicated Rogers' insufficient-evidence claim. (ECF No. 4, PageID.142 (citing *Johnson v. Williams*, 133 S.Ct. 1088, 1096 (2013).) Instead, the Court will review this claim *de novo*.

"Evidence is sufficient to support a conviction so long as 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Cavazos v. Smith*, 565 U.S. 1, 7 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original)).

Rogers' primary argument is that there was insufficient evidence to establish his identity as the shooter. Under Michigan law, "the identity of a defendant as the perpetrator of the crimes charged is an element of the offense and must be proved beyond a reasonable doubt." *Byrd v. Tessmer*, 82 F. App'x 147, 150 (6th Cir. 2003) (citing *People v. Turrell*, 181 N.W.2d 655, 656 (Mich. Ct. App. 1970)).

He argues both that "there was ample reason not to believe" Perry's testimony (ECF No. 1, PageID.39–40) and that "even if believed" his testimony would be insufficient to establish identity because Perry testified that Rogers said that "it was a mistake" but he did not say that "it" was the shooting on January 28, 2008, nor did he say that he was involved in that "mistake."

To the extent that Rogers challenges the credibility of the prosecution witnesses, he would not be entitled to relief. Attacks on witness credibility are simply challenges to the quality of the prosecution's evidence, and not to the sufficiency of the evidence. *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002). An assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims. *Gall v. Parker*, 231 F.3d 265, 286 (6th Cir. 2000).

The primary evidence against Rogers was Perry's testimony that Rogers confessed to being the shooter. Perry was in the car when it was shot into and was shot in the hand. (ECF No. 5-5, PageID.650–665.) Perry testified that shortly after the shooting, he went to a house in his neighborhood and saw Rogers and his co-defendant, Tony Hurd. (ECF No. 5-5, PageID.667.) Rogers asked Perry about his hand and said, "I'm glad you're all right." (ECF No. 5-5, PageID.668.) Then he said something to the effect of "It was crazy how it happened." (*Id*.) Then Perry testified that Rogers "started to tell [him]" "who was responsible" and said that "it was a mistake" and "something had went wrong—what happened, it was the wrong car." (ECF No. 5-5,

PageID.669.) Perry testified that Rogers told him that he, Hurd and "Dollar" were in the car. (*Id*.) And that "after [Perry] stopped at the light they pulled up on the side of [them] —but not all the way, then shot the top of the car and the bottom of the car" "to kill everybody that was inside." (ECF No. 5-5, PageID.670–671.) Dollar also had a gun, but it jammed before he had a chance to shoot. (ECF No. 5-5, PageID.671.) Then an alarm went off that "scared [Hurd] and he [drove] off." (ECF No. 5-5, PageID.673.) Rogers asked whether Perry knew the girls in the car. (*Id*.) And when Perry said no, Rogers said "good—, like—I thought it was you all's girls." (ECF No. 5-5, PageID.674.)

There was also testimony from Jarmel Reives. But this testimony was mixed in implicating Rogers. He at first testified that he overheard Rogers say, "If they shot, I hope *they* didn't shoot my little dog." (ECF No. 5-7, PageID.986 (emphasis added).) "Little dog" was his name for Perry. (ECF No. 5-7, PageID.987.) After being further questioned, Reives appeared to change his testimony to Rogers saying, "*I* almost shot my little dog." (ECF No. 5-7, PageID.1005–1007(emphasis added).) Reives further testified that Rogers said that he knew he shot somebody, but he did not know who. (ECF No. 5-7, PageID.1006.) But later, he testified again that he overheard Rogers say, "I hope *they* didn't shoot my little dog." (ECF No. 5-7, PageID.1032 (emphasis added).) Given how often he switched between testifying that Rogers said "I" and "they," this testimony contributes little to the sufficiency of the evidence.

But Rogers' confession to Perry, if believed, is likely sufficient to establish his identity as the shooter. Despite what Rogers is arguing now, it was not ambiguous that Perry's testimony about Rogers' alleged confession concerned the January 28 shooting. The conversation took place a day or two after the shooting. Rogers asked about Perry's hand, and in response, started to tell him what happened, how Hurd had pulled the car next to theirs and how he had shot up the car to

11

kill everyone inside. Rogers also asked whether Perry knew the girls that were inside the car. So Perry's testimony was strong evidence that Rogers was the shooter. And although little corroborating evidence was presented, the Court cannot find that, if believed, Perry's testimony alone would be insufficient evidence to permit any reasonable jury to find, beyond a reasonable doubt, that Rogers was the shooter.

Rogers further appears to argue that there was insufficient evidence of premeditation and deliberation to sustain his conviction for first-degree murder.

To constitute first-degree murder in Michigan, the state must establish that a defendant's intentional killing of another was deliberate and premeditated. *See Scott v. Elo*, 302 F.3d 598, 602 (6th Cir. 2002) (citing *People v. Schollaert*, 486 N.W.2d 312, 318 (Mich. Ct. App. 1992)). The elements of premeditation and deliberation may be inferred from the circumstances surrounding the killing. *See Johnson v. Hofbauer*, 159 F. Supp. 2d 582, 596 (E.D. Mich. 2001) (citing *People v. Anderson*, 531 N.W.2d 780 (Mich. Ct. App. 1995)). Although the minimum time required under Michigan law to premeditate "is incapable of exact determination, the interval between initial thought and ultimate action should be long enough to afford a reasonable man time to subject the nature of his response to a 'second look.'" *See Williams v. Jones*, 231 F. Supp. 2d 586, 594-95 (E.D. Mich. 2002) (quoting *People v. Vail*, 227 N.W.2d 535 (Mich. 1975) *overruled on other grounds in People v. Graves*, 581 N.W.2d 229 (Mich. 1998)). Premeditation and deliberation may also be inferred from the type of weapon used and the location of the wounds inflicted. *See People v. Berry*, 497 N.W.2d 202 (Mich. Ct. App. 1993). Use of a lethal weapon will support an inference of an intent to kill. *Johnson,* 159 F. Supp. 2d at 596 (citing *People v. Turner*, 233 N.W.2d 617 (Mich. Ct. App. 1975)).

In the present case, there was sufficient evidence for a rational trier of fact to conclude that Rogers acted with premeditation and deliberation when he shot the victim. Rogers claims that there was insufficient evidence of premeditation because he told Perry that he had shot at the wrong car. But pursuant to the doctrine of transferred intent, Rogers could be liable for the victim's death, even though he intended to kill someone in another car but killed the victim instead. *See People v. Youngblood*, 418 N.W.2d 472 (Mich. Ct. App. 1988). Rogers told Perry that he intended to kill everyone in the vehicle. Rogers's involvement in what was essentially a drive-by shooting supported an inference of premeditation and deliberation. *See e.g., Puckett v. Costello*, 111 F. App'x 379, 383–84 (6th Cir. 2004). The evidence established that the victim was shot multiple times. The firing of multiple gunshots at the victim was also sufficient to establish premeditation and deliberation. *See Thomas v. McKee*, 571 F. App'x 403, 407 (6th Cir. 2014).

So even on *de novo* review, Rogers is not entitled to relief on his third claim.

**D.**

Rogers lastly contends that his due process rights were violated when the state trial court failed to grant him a new trial without holding a hearing. The basis for the new trial request was newly discovered evidence consisting of an affidavit from Anita Stafford, a woman who lived in the Perry brothers' neighborhood. (ECF No. 5-13, PageID.1224.) Her affidavit attacked the credibility of Perry. She said that the Perry brothers threatened her physically, verbally, and with their dogs. (*Id*.) She also claims she heard Rayvon Perry say on the day of Rogers' sentencing that "[w]e fooled them. We got our block back." (*Id*.)

The Warden argues that this claim is procedurally defaulted. (ECF No. 4, PageID.144–147.) He argues that Rogers did not present this claim on direct appeal, did not comply with Mich.

Ct. R. 6.508(D)(3) to show that he was nevertheless entitled to relief, and the state court enforced that rule. (ECF Nos. 5-15, 5-18.)

In most circumstances, a federal court may not consider the federal claims in a habeas corpus petition if a state court has denied relief because the petitioner "failed to meet a state procedural requirement." *Coleman v. Thompson*, 501 U.S. 722, 730 (1991). To cement a procedural default, Rogers must have failed to comply with a procedural rule, the state courts must have enforced the rule against him, the rule must be an "adequate and independent" ground for barring habeas corpus review, and Rogers cannot excuse the default. *Willis v. Smith*, 351 F.3d 741, 744 (6th Cir. 2003); *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

All of these factors are met here. First, the state trial court clearly enforced Mich. Ct. R. 6.508(D)(3) to deny this claim. *See Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991); (ECF Nos. 1-9, PageID.82.) Second, "[i]t is well-established in this circuit that the procedural bar set forth in Rule 6.508(D) constitutes an adequate and independent ground on which the Michigan Supreme Court may rely in foreclosing review of federal claims." *Munson v. Kapture*, 384 F.3d 310, 315 (6th Cir. 2004). Third, Rogers does not present an excuse for the default.

Regardless, even assuming the claim was not defaulted, Rogers is not entitled to habeas relief. Whether to grant a defendant a new trial involves issues of state law and the Court cannot grant habeas relief based upon perceived errors of state law. *Estelle*, 502 U.S. at 67–68. So the Court will only grant habeas relief if this state-law error takes on a constitutional dimension. *Id*.

Here, Rogers couches his argument as a "due process" violation. But he does not explain (or support) a due-process argument arising out of a state court's denial of a new trial based solely upon newly discovered impeachment evidence. Instead, he simply states that Michigan courts must apply its four-factor test in determining whether he is entitled to a new trial "in compliance with

14

the due process clause." (ECF No. 1, PageID.44.) And that "due process of law requires a new trial where adequate newly discovered evidence is found." (ECF No. 1, PageID.52.) While Rogers cites to case after case, at bottom, he does not explain how his due process rights were violated by the denial of his request for a new trial based solely on allegedly new impeachment evidence.

Further, to the extent Rogers claims that the state court erred in not holding a hearing on his motion for new trial, he is not entitled to habeas relief. Even assuming a right to such a hearing, "errors in post-conviction proceedings are outside the scope of federal habeas corpus review." *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007).

So the Court will not grant Rogers relief on this claim.

## IV.

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted). In this case, the Court concludes that reasonable jurists could debate whether the prosecutor's improper vouching deprived petitioner of a fair trial. Therefore, the Court will grant a certificate of appealability on this issue.

For the reasons stated above, the petition for a writ of habeas corpus is DENIED, a certificate of appealability is GRANTED in part and the matter is DISMISSED.

15

IT IS SO ORDERED.

                                          s/Laurie J. Michelson
                                          LAURIE J. MICHELSON
                                          UNITED STATES DISTRICT JUDGE

Date: March 26, 2019

## CERTIFICATE OF SERVICE

     I hereby certify that a copy of the foregoing document was served upon counsel of record on this date, March 26, 2019, using the Electronic Court Filing system.

                                          s/William Barkholz
                                          Case Manager